Anthony ANDERSON, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 483S108.

Supreme Court of Indiana.

July 31, 1984.

Correction for a period of twelve years. His direct appeal raises the following five issues:

1. Whether there was sufficient evidence to withstand defendant's motion for directed verdict and to support the verdict of the jury;

2. Whether the trial court erred in admitting certain exhibits into evidence;

3. Whether the trial court erred in denying defendant's motion to suppress his confession;

4. Whether the trial court erred in denying defendant's motion for continuance when defendant became ill during trial; and

5. Whether the imposition of the enhanced sentence is cruel and unusual punishment.

A brief summary of the facts from the record shows that on February 20, 1982, defendant's girlfriend, Kim Reveter, and her two young sons, Antoine and Craig, were living in defendant's home. Around 9:00 p.m. that evening, the boys' mother left the home with two other friends. Craig, who was six years old, was asleep, but Antoine, who was two years old, was not asleep and soon began crying for his mother. Defendant told him to be quiet and when the boy wouldn't quit crying, defendant told him to take off his clothes. Defendant whipped the boy with a belt and when one belt broke, he took another belt and continued the beating. Finally, he decided the "whelps" were getting bad, so he put the boy in the bathtub. The boy continued to ask for his mother and defendant dunked him under water several times. The boy may have hit his head on the bathtub, but defendant did not remember that.

Eventually, defendant took the boy out of the tub and saw that he was coughing up blood and water. He cleaned the boy's face and told him to lie down on the couch. Later, he carried the boy upstairs and put him into the bed and lay down beside him. He saw that the boy wasn't moving anymore and determined that the child was

Verl L. Myers, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Anthony Anderson, was convicted by a jury of voluntary manslaughter, a Class B felony, Ind.Code § 35–42–1–3 (Burns 1979 Repl.) and was sentenced to the Indiana Department of

dead. When he realized what he had done he took several pills in order to kill himself, but the pills weren't strong enough. Then he got a shotgun but didn't have the nerve to shoot himself. He lay down beside the child and waited for Kim to come home, thinking he might be dead by then.

When Kim returned she found defendant and Antoine lying on her bed. Antoine was on his side and was covered up as if he were asleep. Defendant was afraid to tell Kim about the child's death and Kim lay down and slept until about 10:00 a.m. the next morning.

When Kim got up she saw that Antoine had been turned over on his back and there was blood on his face. Defendant jumped up and grabbed her and tried to explain what had happened saying that he was sorry and didn't know why he did it. Kim pulled the covers off Antoine and saw that his body was covered with bruises and felt very cold to her touch. Kim was afraid of defendant, so she told him to go downstairs into the basement and said she would talk to him there. She then took her other son and went next door and called the police. The autopsy revealed multiple bruises all over the victim's body which indicated he had been beaten with an object such as a belt. There had also been blows to the head which caused extensive hemorrhaging and the resulting pressure against the brain was the ultimate cause of death.

In defendant's confession, defendant admitted beating the victim with two belts and dunking him in cold water because he wouldn't be quiet. He said that his suicide attempts were the result of the extreme remorse he felt when he found the child had died. He stated that he wrote a note to Kim intended as a suicide note in which he also stated that he was sorry and had not meant to kill the boy.

### I.

Defendant first contends that there was not sufficient evidence on the necessary element of the intent to kill to support the jury's verdict. He alleges that there are several factors here which show he did not intend to kill the child. He first points out that the record shows that he stopped beating the child when he noticed the "whelps" were getting bad. The record also shows that he stated that he did not mean to kill the child in a note he wrote to the child's mother. Additionally, there is evidence of defendant's extreme remorse upon his discovery the child had died because of his suicide attempts at that time. Defendant also points to the testimony of the doctor who performed the post-mortem examination. The doctor found that the bruises on the child's body had apparently been caused by a belt but not a belt buckle. The doctor also found that while there was trauma from the head being struck, there was no skull fracture.

 Our standard for reviewing sufficiency claims is firmly established; on appeal the reviewing court does not weigh the evidence or judge credibility. We consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *McNary v. State,* (1984) Ind., 460 N.E.2d 145; *Tunstall v. State,* (1983) Ind., 451 N.E.2d 1077; *Fielden v. State,* (1982) Ind., 437 N.E.2d 986. In other cases involving adults beating small children we have held that the intent to kill could be inferred from repeated severe blows to a child where anyone with reasonable judgment would know that blows of such magnitude could fatally injure the child. *Horne v. State,* (1983) Ind., 445 N.E.2d 976; *Burkhalter v. State,* (1979) 272 Ind. 282, 397 N.E.2d 596; *Corbin v. State,* (1968) 250 Ind. 147, 234 N.E.2d 261. The necessary intentional element of the crime of voluntary manslaughter can be proved by evidence that the accused had a conscious objective to kill another or was aware of a high probability that his conduct would result in the death of that other individual. Ind.Code § 35–41–2–2 (Burns 1979 Repl.); *Burkhalter v. State,* 272 Ind. at 285, 397 N.E.2d at 598.

In this case, the evidence shows that defendant voluntarily and intentionally beat the two year old child with a belt and that when one belt broke he continued the beating with another belt. He admitted that he whipped the child all over his body with the belt and may also have struck him about the head. He also admitted dunking the child under water in the bathtub several times when he noticed "the whelps" were getting bad. These were sufficient facts to support the jury's determination that defendant was aware of a high probability that the continuous and severe beating of the two year old boy would result in the boy's death.

Defendant moved for a directed verdict at the close of the state's case. This motion can only be granted in instances where there is a total lack of evidence on some essential issue or where there is no conflict in the evidence and it is susceptible only to an inference in favor of the accused. *Faught v. State,* (1979) 271 Ind. 153, 390 N.E.2d 1011; *Mitchell v. State,* (1978) 268 Ind. 437, 376 N.E.2d 473. Here the state had presented ample evidence of the intentional and severe beating of the two year old victim. This was a sufficient factual base for the inference of culpability. Accordingly, the trial court correctly denied defendant's motion for a directed verdict.

## II.

Defendant next contends that the trial court erred in admitting photographs of the victim into evidence because they were repetitive and highly prejudicial to him. The six photographs show the victim's face, both sides of the upper part of his body, both sides of the lower part of his body, and the back of his legs. While some of the photographs are repetitive to some extent, each photograph is relevant to show the nature of the wounds on different parts of the boy's body.

It is axiomatic that the admission of photographs into evidence is within the sound discretion of the trial court and reversal will be granted only upon a show-ing of abuse of that discretion. The fact that photographs are of a gruesome and repetitious nature is not sufficient ground in itself to justify their exclusion as long as the evidence is material and relevant. *McNary v. State,* (1984) Ind., 460 N.E.2d 145; *Akins v. State,* (1981) Ind., 429 N.E.2d 232; *Brandon v. State,* (1978) 268 Ind. 150, 374 N.E.2d 504. Relevancy of a photograph is determined by an inquiry as to whether a witness would be permitted to describe the objects in the photographs. *Harden v. State,* (1982) Ind., 441 N.E.2d 215; *Clemons v. State,* (1981) Ind., 424 N.E.2d 113.

The photographs here were clearly relevant to show the nature of the various wounds and the extent of the beating. Defendant has not demonstrated that the photographs were unduly gruesome and would inflame the passions of the jury. Without an imbalance between their relevance and a clear showing of a tendency to influence the jury improperly, the trial court's determination will not be disturbed. *Akins v. State,* 429 N.E.2d at 236; *Bates v. State,* (1977) 267 Ind. 8, 366 N.E.2d 659.

## III.

Defendant next contends that the trial court erred in denying his motion to suppress his inculpatory statement. The trial court heard evidence at the hearing on the motion to suppress which showed defendant read and signed a waiver of rights form when he was taken to the police station about noon on February 21, 1982. The police testified that defendant was asked if he understood each point on the waiver of rights form and he responded positively to the question each time it was asked. They testified that he appeared to understand the questions that were asked and the information that was read to him. His speech was not slurred and his eyes did not appear to be glazed. He was able to follow instructions and his walking was normal. He stated at that time that he was sober.

However, defendant now contends that his statement was not made voluntarily

because he was still under the influence of the pills he had taken the night before. He testified that he really didn't pay any attention to the police when they advised him of his rights "because he wanted to die." He stated that he was nauseated from the pills and was nervous and scared. He said he only "sort of" knew what he was doing when he confessed.

■■■ The question of voluntariness is one for the trial court. As a court of review, we review the question of the admissibility of a confession as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there was substantial evidence of probative value to support the trial court's finding. This is true even though conflicting evidence is presented on the issue of voluntariness. *Long v. State*, (1981) Ind., 422 N.E.2d 284. The admissibility of a statement or confession is controlled by determining from the totality of circumstances whether or not the confession was given voluntarily and not through inducement, violence, threats or other improper influences so as to overcome the free will of the accused. *Grassmyer v. State*, (1981) Ind., 429 N.E.2d 248; *Schutz v. State*, (1981) Ind., 413 N.E.2d 913; *Love v. State*, (1980) 272 Ind. 672, 400 N.E.2d 1371.

■■■ Here, defendant was not subjected to any lengthy interrogations and there is no evidence of any physical abuse or coercive action by the police which logically would have misled defendant or overborne his will in regard to his voluntary statement. There was evidence that it had been at least twelve hours since defendant had taken any pills or other intoxicating substance. The officers testified that defendant appeared normal and was able to understand and follow instructions. There was substantial evidence to support the trial court's finding of the voluntariness of defendant's statement and it was properly admitted.

### IV.

Defendant next contends that the trial court erred in denying his motion for a continuance when he became ill during the trial. The record shows that defendant had an epileptic seizure one Thursday afternoon during the trial. He was promptly taken to the jail for a medical examination and possible treatment. The court was recessed for approximately one hour at which time defendant returned and was able to continue the trial. The court specifically asked defendant's counsel if defendant was unable to communicate and the counsel answered, "I don't think so," indicating that defendant was able to communicate and participate in the trial.

■■■ It is well settled that the grant or denial of a continuance not based on statutory grounds is within the trial court's discretion. To overcome the court's ruling it must be shown that the denial prejudiced the defendant. *Bailey v. State*, (1983) Ind., 447 N.E.2d 1088; *Dorton v. State*, (1981) Ind., 419 N.E.2d 1289. Here, defendant has not presented any evidence to show that a continuance was considered necessary for medical reasons or was even recommended by a physician. During the remainder of the afternoon when defendant returned to the courtroom, the state concluded the presentation of its evidence. Defendant has not shown that the cross-examination of the state's witnesses was limited in any way by his physical condition. He had received medical attention at the time of his physical problem and the court had no indication from any medical experts that defendant was physically unable to continue the trial at that time. We find no abuse of discretion.

### V.

Defendant finally alleges that the enhancement of the basic ten-year sentence with an additional two years is cruel and unusual punishment in this case and should be set aside. He points out that the trial court listed two mitigating circumstances and two aggravating circumstances as reasons for the specific sentence given in the following terms:

The reasons for the imposition of the sentence are as follows: There are substantial grounds tending to excuse or justify the crime, though failing to establish a defense of insanity or intoxication. The Defendant has no history of delinquency or criminal activity. Imposition of a reduced sentence and imposition of probation would depreciate the seriousness of the crime in that there was evidence of torture, body wounds and testimony of repeatedly dousing the boy in cold water over his head. The victim of the crime was mentally and physically infirm in the following particulars: He was a defenseless two (2) year old boy."

Defendant argues that there are other possible mitigating factors which the court did not consider such as the fact that the crime was the result of circumstances unlikely to recur and that defendant was unlikely to commit another crime. He also argues that since the court listed an equal number of aggravating and mitigating circumstances this was not a sufficient record to support the enhanced sentence.

This Court has continually held that when a trial court uses its discretionary power to increase or decrease the basic sentence or impose consecutive terms of imprisonment, the record must disclose what factors were considered by the judge to be mitigating or aggravating circumstances. *Tuggle v. State,* (1984) Ind., 457 N.E.2d 1094. When a sentence is within statutory limits, this Court is not at liberty to set aside or alter the sentence unless the record indicates a manifest abuse of discretion. *Arnold v. State,* (1984) Ind., 460 N.E.2d 494; *George v. State,* (1980) 273 Ind. 271, 403 N.E.2d 339. It is within the trial court's authority to determine the weight to be given in each case to aggravating and mitigating circumstances and accordingly, to increase or decrease the sentence as provided by the statute. *Lang v. State,* (1984) Ind., 461 N.E.2d 1110; *Dorton v. State,* (1981) Ind., 419 N.E.2d 1289; *Dean v. State,* (1980) 272 Ind. 446, 398 N.E.2d 1270.

Here, the record shows that the trial court did consider the facts of the specific crime and the applicable mitigating and aggravating circumstances. It was within the court's discretion to find that the aggravating circumstances outweighed the mitigating circumstances sufficiently to support the enhanced sentence. The sentence is clearly within the statutory limits and the court gave sufficient aggravating circumstances to support the enhanced sentence. In consideration of the circumstances in which the crime occurred and the helpless position of the young victim, we cannot say the sentence is cruel and unusual punishment. We find no error in the sentence imposed.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.