Wallace **WILKINS**, Appellant
(Defendant Below),

v.

**STATE of Indiana, Appellee**
(Plaintiff Below).

No. 49S00–9803–CR–160.

Supreme Court of Indiana.

Oct. 4, 1999.

Michael Gene Worden, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Wallace Wilkins was convicted of murder and sentenced to fifty-five years imprisonment. In this direct appeal, Wilkins contends that the trial court erred by instructing the jury on the lesser included offense of voluntary manslaughter. We affirm the decision of the trial court.

## Factual and Procedural Background

On January 4, 1997, Wilkins went to Robert "Tony" Bond's house to see Tony and his brother, David, who was Wilkins' best friend. The three men then visited the Bonds' grandmother and completed several errands. Later that afternoon, all three returned to Tony's house. Tony had left two dollars for gas on the dashboard of Wilkins' car. When Wilkins discovered that David had taken the money, he began to argue with David. The fight escalated to the point that David pulled out a screwdriver and hit Wilkins in the neck.

Wilkins then went to the hospital, where he received one stitch for his wound. Wilkins called Tony from the hospital to threaten David, and proceeded to his uncle's house. Wilkins told his uncle what had transpired and threatened to kill David. The two decided to "go get" David using a metal pole that Wilkins' uncle provided.

Wilkins and his uncle found David on his front porch. Wilkins delivered a number of blows with the pole to David's head and body while repeating that David had tried to kill him. Wilkins' uncle attempted to intercede, but Wilkins hit David several more times before David fell to the ground. When Wilkins and his uncle left the porch, David was unconscious.

At approximately 5:30 p.m., the police were called because two women had seen David bleeding on the porch. David was pronounced dead slightly before 6:00 p.m. He had eleven blunt force injuries to his head and body. His death was the result of a blow to the head that caused bleeding into his brain. The jury convicted Wilkins of murder and he was sentenced to fifty-five years imprisonment.

## Voluntary Manslaughter Instruction

Wilkins was charged with murder and tendered instructions on involuntary manslaughter and reckless homicide, but objected to the State's proposed instruction on voluntary manslaughter. The trial court gave instructions on murder, voluntary manslaughter, involuntary manslaughter, and reckless homicide. Wilkins' sole claim of error is that the trial court improperly instructed the jury on voluntary manslaughter in the absence of any evidence of sudden heat. Wilkins contends that this instruction confused the jury and therefore denied him due process.

 *Wright v. State,* 658 N.E.2d 563 (Ind.1995), established the test for a trial court's instructions on lesser included offenses. Under *Wright,* an instruction is to

be given if the lesser offense is inherently or factually included in the greater offense and there is a serious evidentiary dispute about an element that distinguishes the two offenses. 658 N.E.2d at 566–67. "Voluntary manslaughter is simply murder mitigated by evidence of 'sudden heat.'" *Griffin v. State,* 644 N.E.2d 561, 562 (Ind. 1994). As such, it is an inherently included offense of murder. The trial court made no explicit finding as to the presence or absence of sudden heat. Accordingly, we review that determination de novo. *See Brown v. State,* 703 N.E.2d 1010, 1019–20 (Ind.1998); *Champlain v. State,* 681 N.E.2d 696, 700 (Ind.1997).

Although the length of time between the inflammatory incident in which David stabbed Wilkins and Wilkins killing David is normally sufficient "cooling off" time to refute a claim of sudden heat, *see, e.g., Stevens v. State,* 691 N.E.2d 412, 427 (Ind. 1997), the State cites several pre-*Wright* cases that note "it is not erroneous in a murder trial to give the jury an instruction on voluntary manslaughter, even in the absence of evidence of sudden heat." *Griffin,* 644 N.E.2d at 564; *Gilley v. State,* 560 N.E.2d 522, 523–24 (Ind.1990). *Wright* held that it is reversible error to refuse an instruction on a lesser included offense if there is a serious evidentiary dispute, but observed only that the trial court "should not" give an instruction if the evidence does not support it. *See* 658 N.E.2d at 567. This Court has not addressed the continued viability of these pre-*Wright* cases, nor have we explicitly addressed the question of whether giving an instruction in the absence of a serious evidentiary dispute is per se reversible error.

█ In this case it is not necessary to resolve this question. The jury convicted Wilkins of murder. The defense's theory of the case was that the death was not intentionally or knowingly caused. If the jury had chosen to believe this theory, the mens rea element of both murder and voluntary manslaughter would have been negated, leaving the other two charges as possible convictions. The voluntary manslaughter instruction merely presented the jury with another lesser option that it rejected, and the addition of the voluntary manslaughter instruction to the jury instructions given was not substantially more confusing than the defense-supported instructions on involuntary manslaughter and reckless homicide. Accordingly, if there was any error in giving the voluntary manslaughter instruction, it was harmless. *See Porter v. State,* 671 N.E.2d 152, 155 (Ind.Ct.App.1996).

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and SELBY, JJ., concur.